1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   Compu-Link Corporation, doing business as        No. 2:22-cv-00983-KJM-KJN
     Celink, a Michigan Corporation,
12                                                     ORDER
                              Plaintiff,
13

14          v.

15   PHH Mortgage Corporation, a New Jersey
     Corporation,
16
                              Defendant.
17

18

19          Plaintiff Compu-Link Corporation, which does business as "Celink," services reverse

20   mortgages.  It describes a reverse mortgage as "a loan available to seniors aged 62 or older that

21   allows them to borrow money against the value of their home."  Compl. ¶ 27, ECF No. 1.  Celink

22   alleges its competitor, defendant PHH Mortgage Corporation, breached a contract the two

23   companies had previously entered and also interfered with Celink's clients' contracts, among

24   other claims.  PHH moves to dismiss Celink's complaint.  *See generally* Mot., ECF No. 12.  The

25   court received full briefing and submitted the matter without hearing oral arguments.  *See*

26   *generally* Opp'n, ECF No. 17; Reply, ECF No. 18; Min. Order, ECF No. 27.  As explained in the

27   first section below, the court **grants the motion in part with leave to amend**.  The parties also

request leave to file several documents under seal.  As explained in the second section below, the court **denies that request without prejudice to renewal**.

## I.      MOTION TO DISMISS

PHH moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).  The parties are familiar with the legal standard for motions filed under that Rule, which the court applies here without restating it in full.  *See* Mem. at 7, ECF No. 12-1 (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); Opp'n at 6–7 (same).  Compu-Link's complaint includes nine claims:

**1. Breach of Contract.**  Celink alleges PHH breached an agreement not to solicit Celink's clients.  *See* Compl. ¶¶ 77, 119–35.  It is undisputed, however, that Celink's complaint misquotes a key term of the relevant agreement.  *See* Mem. at 5; Opp'n at 9 & n.4; Errata, ECF No. 21.  Celink now relies on a different theory of breach in its opposition brief than it did in its complaint.  *Compare, e.g.*, Opp'n at 11 (alleging "scrivener's error" and similar mistakes) *with, e.g.*, Compl. ¶¶ 126–27 (alleging breach of express terms).  Celink does not allege PHH breached the non-solicitation provision as written in the agreement.  Given this disconnect, the court dismisses the first claim with leave to amend.

**2. Breach of the Implied Covenant of Good Faith.**  The covenant of good faith and fair dealing "is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).  Celink alleges PHH used its agreement with Celink as cover for a scheme to steal Celink's confidential information and clients.  *See, e.g.*, Compl. ¶¶ 142–44.  These allegations allow a plausible inference that PHH wrongfully frustrated Celink's rights under the agreement.  The court denies the motion to dismiss this claim.

**3. Tortious Interference with Contract.**  The elements of a claim for tortious interference with contract are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the

2

1   contractual relationship; and (5) resulting damage." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th

2   1180, 1191 (9th Cir. 2022) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d

3   1118, 1126 (1990)).  Celink alleges it had contracts with two specific third parties (MAM and

4   WAM), Compl. ¶¶ 150–57, PHH knew Celink had contracted with these third parties, *id.* ¶¶ 160,

5   the third parties ended their contractual relationships with Celink at PHH's urging, *id.* ¶¶ 88, 91,

6   161, 164, Celink was deprived of contract rights to make bids to the same third parties for future

7   business, *id.* ¶¶ 105–16, 162–63, and Celink suffered financial harms as a result, *id.* ¶¶ 164–65.

8   When read in the light most favorable to Celink, these allegations support a claim for tortious

9   interference with contract.  The court denies the motion to dismiss this claim.

10        **4. Inducement of Breach of Contract.**  The elements of a claim for an induced breach of

11   contract are the same as the elements of a claim for tortious interference with a contract, but to

12   prevail, a plaintiff must also prove a "contract was in fact breached."  *Shamblin v. Berge*,

13   166 Cal. App. 3d 118, 123 (1985) (quoting *Dryden v. Tri-Valley Growers*, 65 Cal. App. 3d 990,

14   995 (1977)).  Celink alleges the third parties noted above breached their agreement to work

15   exclusively with Celink.  *See* Compl. ¶¶ 91, 179–181.  However, in its opposition, Celink

16   addresses only the breach of contract by one of the third parties (MAM).  Opp'n at 16–17.  Celink

17   does not defend its claim about a different breach by the other third party (WAM).  *See id.*  The

18   court thus dismisses this claim in part, with leave to amend.

19        **5. Tortious Interference with Prospective Economic Advantage.**  To state a claim for

20   tortious interference with prospective economic advantage, a plaintiff must allege "the defendant

21   knowingly interfered with an economic relationship between the plaintiff and some third party,

22   which carries the probability of future economic benefit to the plaintiff."  *Ixchel Pharma, LLC v.*

23   *Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) (quotation marks and alterations omitted) (quoting

24   *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).  The defendant must

25   have committed some "independently wrongful" act, i.e., a wrongful act independent of the

26   interference itself.  *Id.* at 1142.  "[A]n act is independently wrongful if it is unlawful, that is, if it is

27   proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal

28   standard."  *Id.* (quoting *Korea Supply*, 29 Cal. 4th at 1159).  Celink does not allege PHH's

1    actions were independently wrongful in this sense.  Celink alleges only that PHH "acted in a

2    manner designed to disrupt Celink's relationship with WAM and MAM and divert WAM and

3    MAM's subservicing business to itself."  Compl. ¶ 197.  The court dismisses this claim, with

4    leave to amend.

5        **6. Indemnification.**  Celink alleges its contract with PHH requires PHH to indemnify

6    Celink for losses incurred as a result of a "material breach" of their agreement or as a result of

7    PHH's "gross negligence, willful misfeasance, or bad faith."  Compl. ¶ 203.  This claim thus rests

8    in part on Celink's dismissed claim for breach of contract.  To that extent, the court dismissed it

9    in part with leave to amend.  The court denies the motion to dismiss to the extent the

10   indemnification claim rests on Celink's viable claim that PHH intentionally frustrated Celink's

11   rights under their agreement in violation of the implied covenant of good faith.  *See* Compl.

12   ¶¶ 142–48.

13       **7. Unfair Competition.**  Celink alleges PHH violated California's Unfair Competition

14   Law, which forbids "any unlawful, unfair or fraudulent business act or practice."  *Cel-Tech*

15   *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (quoting Cal. Bus. & Prof.

16   Code § 17200).  Celink first appears to argue PHH's conduct was "fraudulent" because it was

17   "deceptive," but Celink does not explain which of PHH's alleged actions support this claim.  *See*

18   Opp'n at 18.  The complaint, in turn, simply incorporates all of its previous allegations, which

19   span more than 200 paragraphs.  *See* Compl. ¶ 211.  Such a broad and generic assertion does not

20   satisfy the requirements of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to

21   "state with particularity the circumstances constituting fraud."  Celink's generalized cross-

22   reference does not give PHH "notice of the particular misconduct" or allow it to "defend against

23   the charge" rather than "just deny that [it has] done anything wrong."  *Vess v. Ciba-Geigy Corp.*

24   *USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Bly-Magee v. California*, 236 F.3d 1014,

25   1019 (9th Cir. 2001)).  Celink also argues PHH's conduct was "unlawful" under the Business and

26   Professions Code because PHH violated unspecified state and federal antitrust laws.  Compl.

27   ¶¶ 214–16.  This simple legal conclusion does not suffice to support Celink's claim, especially in

1  the antitrust context. *See Twombly*, 550 U.S. at 555.  The court dismisses this claim, with leave to

2  amend.

3      **8. Unjust Enrichment.**  Celink asserts an independent claim for unjust enrichment. *See*

4  Compl. ¶¶ 224–30.  PHH argues California courts do not recognize independent claims for unjust

5  enrichment.  Mot. at 20.  This court has interpreted California law as allowing independent claims

6  for unjust enrichment as quasi-contract claims for restitution. *See, e.g.*, *Obertman v. Electrolux*

7  *Home Care Prod., Inc.*, 482 F. Supp. 3d 1017, 1027–28 (E.D. Cal. 2020).  California law remains

8  uncertain, but that uncertainty is usually unnecessary to resolve when, as is true in this case,

9  Celink can assert an equivalent equitable claim in any event. *See, e.g.*, *Stark v. Patreon, Inc.*, ___

10  F. Supp. 3d ___, No. 22-03131, 2022 WL 7652166, at *10 & n.6 (N.D. Cal. Oct. 13, 2022).  The

11  court denies the motion to dismiss this claim.

12      **9. Attorneys' Fees and Costs.**  Celink asserts a claim for attorneys' fees and costs under

13  its contract with PHH.  Compl. ¶¶ 231–33.  It also seeks attorneys' fees and costs as a remedy.

14  *See id.* at 36.  Federal district courts do not ordinarily permit independent claims for attorneys'

15  fees and costs. *See, e.g.*, *Mull v. Motion Picture Indus. Health Plan*, 937 F. Supp. 2d 1161, 1181

16  (C.D. Cal. 2012).  The court thus dismisses Celink's claim for fees and costs, without leave to

17  amend.  Celink may request attorneys' fees and costs as a remedy if it ultimately prevails.

18  **II.   REQUEST TO FILE UNDER SEAL**

19      Celink and PHH have asked to seal copies of some crucial contracts.  Req. to Seal, ECF

20  No. 30.  "[T]he courts of this country recognize a general right to inspect and copy public records

21  and documents, including judicial records and documents." *Nixon v. Warner Commc'ns*,

22  435 U.S. 589, 597 (1978) (footnote omitted).  Although that right is not absolute, "a 'strong

23  presumption in favor of access' is the starting point." *Kamakana v. City of Honolulu*,

24  447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*,

25  331 F.3d 1122, 1135 (9th Cir. 2003)).  This presumption "is 'based on the need for federal courts,

26  although independent—indeed, particularly because they are independent—to have a measure of

27  accountability and for the public to have confidence in the administration of justice.'" *Ctr. for*

1    *Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v.*

2    *Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

3            When, as here, documents are filed with motions "more than tangentially related to the

4    merits of a case," *id.* at 1101, such as a motion to dismiss, a party who asks to keep them secret

5    "must meet the high threshold of showing that 'compelling reasons'" support that request,

6    *Kamakana*, 447 F.3d at 1180 (quoting *Foltz*, 331 F.3d at 1136).  This standard applies even if the

7    documents have previously been filed under seal or are covered by a generalized protective order,

8    including a discovery-phase protective order.  *See Foltz*, 331 F.3d at 1136.  To decide whether the

9    party requesting sealing has carried its burden, the court balances the requesting party's reasons

10   for secrecy with the public's interests in disclosure.  *See Kamakana*, 447 F.3d at 1179.  The

11   interest in secrecy generally outweighs the public's interest only if a document will "become a

12   vehicle for improper purposes," such as the gratification of "private spite," the promotion of

13   "public scandal," the reiteration of "libelous statements," or the revelation of "information that

14   might harm a litigant's competitive standing."  *Nixon*, 435 U.S. at 598 (citations and quotation

15   marks omitted).  If a court decides to grant a request to seal, it must explain its reasons and may

16   not rely on "hypothesis or conjecture."  *Kamakana*, 447 F.3d at 1179 (quoting *Hagestad v.*

17   *Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

18           The parties have not explained the basis for their request to file documents under seal

19   beyond a brief statement that the documents "are confidential and protected from disclosure to the

20   general public."  Opp'n at 7 n.2.  In light of the strong presumption in favor of access to court

21   records, and in the face of all-too-frequent and overbroad motions to seal, federal courts deny

22   motions to seal that rely on such "a general category of privilege."  *See Kamakana*, 447 F.3d

23   1184.  A party who wishes to keep its documents secret must point out a "specific linkage"

24   between its interests in secrecy and those documents.  *See id.*  "[C]onclusory offerings do not rise

25   to the level of 'compelling reasons' sufficiently specific to bar the public access to the

26   documents."  *Id.* at 1182.  If a party does not "articulate with any specificity how disclosure"

27   would cause it harm, its request to seal must be denied.  *Tevra Brands LLC v. Bayer HealthCare*

28   *LLC*, No. 19-04312, 2020 WL 1245352, at *3 (N.D. Cal. Mar. 16, 2020).  The court **denies** the

request for leave to file under seal, **without prejudice to renewal** with the necessary showing of compelling reasons if possible.

At the same time, the court notes some of the documents the parties request to file under seal have already been filed publicly as attachments to a request for judicial notice.  *See* RJN Exs. A–D, ECF No. 13-1.  In a previous order, the court provisionally granted the parties' request to seal those documents until the court resolved their request on the merits, *see* Order (Oct. 27, 2022), ECF No. 28, but the previously filed exhibits to the request for judicial notice have remained available on the public docket.  Under this District's Local Rules, if a request to file under seal is denied, "the Clerk will return to the submitting party the documents for which sealing has been denied."  E.D. Cal. L.R. 141(e)(1).  That process is not available for the publicly filed exhibits to the request for judicial notice.  The court will accordingly seal those documents without considering them and deny the request for judicial notice as moot.  If a party requests the court rely on those documents in the future, it must either file them publicly or justify their filing under seal.

### III.   CONCLUSION

The court **grants in part** the motion to dismiss (ECF No. 12) as follows:

- Claim 1 is dismissed with leave to amend.
- Claim 4 is dismissed in part with leave to amend as specified above.
- Claim 5 is dismissed with leave to amend.
- Claim 6 is dismissed in part with leave to amend as specified above.
- Claim 7 is dismissed with leave to amend.
- Claim 9 is dismissed without leave to amend.
- The motion is otherwise denied.

The Clerk's Office is **instructed to seal** the documents previously filed at ECF No. 13-1, which the court has not considered in resolving the motion to dismiss.  The requests to seal (ECF Nos. 20 and 30) are **denied without prejudice to renewal**, as specified above.

1      The court issues the following Rule 16 scheduling order after reviewing the parties' joint

2  status report, ECF No. 31, and after considering the discussion at the scheduling conference, *see*

3  Mins., ECF No. 33:

4      - Any amended complaint or statement of an intent to stand on the original

5        complaint must be filed by **January 20, 2023**.  Deadlines for responsive pleadings

6        and Rule 12 motions will be governed by the Federal Rules and this District's

7        local rules.

8      - Initial disclosures shall be completed **within fourteen days** of the date PHH files

9        its responsive pleading.

10     - Party fact discovery shall be completed by **July 28, 2023**.

11     - Non-party fact discovery shall be completed by **September 29, 2023**.

12     - Experts shall be disclosed and reports served by **December 15, 2023**.

13     - Rebuttal experts shall be disclosed and reports served by **January 26, 2024**.

14     - All discovery shall be completed and all discovery motions shall be filed by

15       **March 1, 2024**.

16     - The parties shall attend a settlement conference or participate in private mediation

17       no later than **April 5, 2024**, and file a report on the status of settlement with court

18       by that date.  Any request for a court-convened settlement conference must be

19       filed on the docket of this action.

20     - All dispositive motions shall be **filed by May 3, 2024 and heard by June 7, 2024**.

21  This order resolves ECF Nos. 12, 13, 20 and 30.

22     IT IS SO ORDERED.

23  DATED:  December 27, 2022.

CHIEF UNITED STATES DISTRICT JUDGE